IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROBERT BELLAVIA

vs.                                                                  5:08cv157/MCR/MD

AGNES L. DAVIS

## REPORT AND RECOMMENDATION

This matter is before the court upon a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (doc. 7).  The government has filed a response (doc. 8), and the petitioner has filed a reply  (doc. 12).

### Facts and allegations

Petitioner Robert Bellavia is a federal prisoner currently housed at the Federal Correctional Institution in Big Spring, Texas.  (Doc. 11).  He was sentenced on August 19, 1993 in the Northern District of Illinois to a term of 20 years imprisonment for a violation of 18 U.S.C. § 371, conspiracy to commit an offense or defraud the United States. At the time of the conduct underlying the incident report at issue in this case, petitioner was designated to the Federal Correctional Institution Pekin Illinois.  On June 13, 2007, he was transferred to FCI Marianna, where the disciplinary rehearing took place.  Petitioner filed this case on May 5, 2008.  On June 25, 2008, he was transferred to FCI Tallahassee, and at some point after that he was transferred to his current facility, FCI Big Spring.

In the instant petition, Bellavia contends that his due process rights were violated when he was subjected to an untimely disciplinary hearing, and the written

rationale failed to comply with the requirements set forth in BOP Program Statement 5270.07. He seeks an order directing that the sanctions imposed by the disciplinary hearing officer be vacated, that the incident report be expunged, and that all of his "rights and privileges" be restored.

The respondent has filed the affidavit of Stanley Davis, a Discipline Hearing Officer (DHO) at FCI Marianna setting forth the facts underlying the petitioner's claim. (doc. 7, declaration). On February 13, 2007, an investigation concluded that petitioner introduced contraband tobacco to FCI Pekin and distributed it to other inmates. (Doc. 7, declar. at ¶ 10, att. 3, sec. 11). Petitioner admitted to investigators that he had paid a female correctional officer approximately $15,500 to introduce the contraband, 155 pouches of tobacco, into the facility, which he then sold or distributed to other inmates. (*Id.*).

Staff members typically provide inmates with written notice of alleged misconduct in the form of an incident report within 24 hours of becoming aware of the inmate's involvement in an allegedly prohibited act. (Doc. 7, declar. at ¶ 11; see also 28 C.F.R. § 541.15). However, "when it appears likely that the incident may be the subject of criminal prosecution, the investigation official shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur." (Doc. 7, declar. at ¶ 11 (quoting BOP P.S. 5270.07, <u>Inmate Discipline and Special Housing Units</u>, Chap. 5, at 3)). In addition, BOP policy requires that the investigator "advise the inmate of the right to remain silent at all stages of the disciplinary process." (*Id.* (quoting P.S. 5270.07, Chap. 6, at 2)).

DHO Davis explains in his declaration that in petitioner's case, although the incident report was completed on February 13, 2007, it was suspended from February 13, 1007 through February 28, 2007 because of an ongoing investigation by the Office of the Inspector General and the Warden's review. (Doc. 7, declar. at

¶ 12 (att. 3, sec. 25). The day that the report was released from suspension, it was delivered to the petitioner in accordance with BOP policy. (Doc. 7, declar. at ¶ 13). Petitioner was charged with a violation of code 111, introduction of any narcotics, marijuana, drugs or related paraphernalia not proscribed for the individual by the medical staff, and code 216, giving or offering an official a bribe or anything of value. (*Id.*, (att. 3, sec. 10)).

After staff delivered the incident report to petitioner, it conducted an investigation, which was commenced and completed on the same day. (Doc. 7, declar. at ¶ 14 (att. 3, sec. 22-27)). The report indicates that petitioner was advised of his rights, including his right to remain silent, and that he made no statement on his behalf, neither confirming nor denying his previous admission. (*Id.*) The investigator concluded that the report was true and warranted and it was referred to the Unit Discipline Committee (UDC) for further action. (*Id.*).

Petitioner appeared before the UDC on March 7, 2007. (Doc. 7, declar. at ¶ 15). He made no comments to the UDC, which then referred the charge to the DHO due to the serious nature of the offense. (*Id.*, att. 3, sec. 18).

Under BOP policy, the UDC should ordinarily convene within three working days from the date staff becomes aware of an inmate's involvement in a prohibited act, but the UDC may extend time periods for good cause. (Doc. 7, declar. at ¶ 16). This three day period excludes the day on which staff learned of the alleged misconduct, weekends and holidays. (*Id.* (citing P.S. 5270.07, Chap. 6 at 1)). A delay beyond three days must be documented in the discipline record, and the inmate advised, while a delay extending beyond five days requires the Warden's signature. (*Id.* (citing P.S. 5370.07, Chap. 6 at 5)).

Staff advised petitioner of the UDC hearing delay and the reasons for the delay via "advisement of incident report delay" notice delivered on March 7, 2007. (Doc. 7, declar. at ¶ 17, att. 4). This was five days after the incident report pursuant to BOP policy. The incident report was delivered to the petitioner on February 28, 2007, and

this day therefore does not count toward the five working days according to policy. The five working days were March 1, 2, 5, 6 and 7, 2007, as March 3 and 4 were weekends. The UDC was held on the fifth working day, March 7, 2007, and therefore the Warden's signature was not required pursuant to this policy.

Following the action by the UDC, staff formally advised petitioner that he was charged with violating BOP rules as set forth above. He was advised that a hearing would be held before the DHO in the next available docket, he was offered representation by a staff member during the hearing, which he declined, and the opportunity to call witnesses, which he also declined. (Doc. 7, declar. at ¶ 18, att. 3 at 3). He was also provided with a written copy of his rights before the DHO. (*Id.*, att. 5).

The disciplinary hearing was held on March 14, 2007. (Doc. 7, declar. at ¶ 19, att. 6). The DHO's report reflects that petitioner was notified of his due process rights, that he did not request representation by a staff member, that he indicated he understood his rights, including the right to remain silent, and that despite understanding these rights, petitioner admitted at the hearing "It happened. I'm guilty." (*Id.*). This statement was consistent with petitioner's previous admission during the investigative process. The DHO also took administrative notice that petitioner's initial UDC was delayed for good cause, and that the delay caused him no appreciable harm nor had a negative impact on his appeal rights through the Administrative Remedy Process. (*Id.*)

The DHO concluded that petitioner had violated code 199, conduct which disrupts or interferes with the security or orderly running of the institution, and code 216, giving or offering an official a bribe or anything of value. (Doc. 7, declar. at ¶ 21). With respect to the code 199 violation, BOP P.S. 5270.07, Chapter 4, page 15 provides that for such a violation, the DHO or UDC should indicate a specific finding of the severity level of the conduct and a comparison to an offense in that severity level which the DHO or UDC finds is most comparable. The DHO found that code

111, introduction of narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff, compared most closely with petitioner's conduct.  For the code 199 violation, petitioner was sanctioned with 60 days in disciplinary segregation, 40 days loss of good conduct time, 3 years loss of all visitation, and a disciplinary transfer.  For the violation of code 216, he  was sanctioned an additional 30 days in disciplinary segregation, 27 days loss of good conduct time and 18 months loss of phone privileges.  (*Id.*, att. 6).  The DHO explained that  petitioner's offense disrupted a tobacco-free institution, had the potential to cause serious disruption to the orderly operation of the institution, ie. by creating an environment open to illicit activity, and subverted staff's integrity. (Doc. 7, att. 6).

Petitioner appealed using the administrative remedy process, and the Regional Director found a procedural error and returned the disciplinary packet to the institution for further review.  (Doc. 7, declar. at ¶ 22, att. 7).  During this time, however, petitioner was transferred from FCI Pekin to FCI Marianna.

On July 10, 2007, declarant Stanley Davis held a disciplinary rehearing at FCI Marianna to reconsider petitioner's incident report.  (Doc. 7, declar. at ¶ 23, att. 8). Mr. Davis states that instead of code 199, he considered whether petitioner had violated code 305, which prohibits possession of anything not authorized for retention or receipt by the inmate and not issued to him through regular channels. (*Id.*)  At the rehearing, petitioner again waived the appearance of a staff representative, had his due process rights reviewed with him, plainly admitted his guilt and presented no contrary evidence on his behalf. (*Id.*)  Mr. Davis considered petitioner's statements and the evidence from the underlying investigation, noted that petitioner did not receive the incident report during the 14 days the report was suspended while under investigation, and that the UDC hearing was not held within the ordinary 3 day period.  He also noted that these delays did not hamper

petitioner's ability to present a defense against the allegations. (*Id.*) In fact, petitioner provided no defense.

DHO Davis found that petitioner had committed the prohibited acts and sanctioned petitioner as before on the code 216 violation, and for the code 305 violation sanctioned him 13 days loss of Good Conduct Time and one year loss of visiting privileges, a significantly more lenient sanction than he had received initially for the code 199 violation. (Doc. 7, declar. at ¶ 25, att. 8, sec. VII). He was advised of his right to appeal. (Doc. 7, att. 8, sec. VIII). Petitioner appealed, and the respondent concedes that petitioner has exhausted his administrative remedies. (Doc. 7, declar. at ¶¶ 6-8, att. 2).

## Legal analysis

Petitioner contends that the sanctions issued in the incident report described above are null and void because of due process violations. Specifically, he contends that the incident report was not delivered within 24 hours, the UDC hearing was not conducted in a timely fashion, and the notice of delay was delivered untimely and without proper insignia. As relief, petitioner asks that the sanctions imposed be made void, that the incident report be expunged and that all his rights and privileges be restored.

### Due Process

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of due process rights that are due a defendant in a criminal proceeding does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In the prison context, due process requirements under the Constitution are satisfied if (1) written notice of the charges is given to the inmate at least twenty-four hours in advance in order to inform him of the charges and to enable him to marshal the facts and prepare a defense, (2) the inmate is given

the opportunity to call witnesses and present evidence when doing so would not unduly interfere with institutional safety or correctional goals, and (3) a written statement is drafted by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Id*. at 563-67, 94 S.Ct. at 2978-80; see also *Ponte v. Real*, 471 U.S. 491, 492 (1985); *Bass v. Perrin*, 170 F.3d 1312, 1318 (1999), *Young v. Jones*, 37 F.3d 1457, 1459-60 (11th Cir. 1994); *Asad v. Crosby,* 158 Fed.Appx. 166, 172-173, (11th Cir. 2005). The first requirement was clearly met in that petitioner was provided with a copy of the incident report on February 28, 2007, seven calendar days before his disciplinary hearing. Petitioner was offered the opportunity, but declined to call witnesses. Finally, with respect to the third requirement, the Supreme Court has held that the district court need only inquire into whether there is "some evidence" upon which the disciplinary team could base its decision. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); see also *Wiliams v. Fountain*, 77 F.3d 372, 374-75 (11th Cir. 1996). "Some evidence" in this case was petitioner's admission, on three separate occasions, that he had engaged in the conduct in question. *Wolff* also requires an impartial hearing board -- a member of the disciplinary board hearing the case may not participate in the case as an investigative or reviewing officer. *Wolff*, 418 U.S. at 539, 572 n. 20. There is no suggestion that the DHO was anything other than impartial in this case. Thus, petitioner has not shown a violation of *Wolff*, generally.

Petitioner asserts three separate procedural defects in the disciplinary proceedings against him. He first contends that the incident report written on February 13, 2007 which was delivered to him on February 28, 2007 was untimely. As noted above, inmates are typically provided with written notice of misconduct in the form of an incident report within 24 hours, unless it appear likely that the incident may be the subject of criminal prosecution. (Doc. 7, declar. at ¶ 11). In such a case the investigation is suspended pending the criminal investigation. This was done in this case. Petitioner's incident report was suspended due to an

ongoing investigation by the Office of the Inspector General and the Warden's review.  The day the incident report suspension was lifted, it was delivered to the petitioner.  Thus, he cannot show a due process violation.

Petitioner also contends that a due process violation occurred when the UDC hearing was conducted untimely in accordance with P.S. 5270.07, Chapter 6, at 5, and that he did not receive proper notification of the delay.   As noted above, the UDC ordinarily convenes within three days, although the UDC may extend that time for good cause.  If an extension is required, the delay must be documented and the inmate advised.  Only delays beyond five work days require the Warden's signature.  (Doc. 7, declar. at ¶ 16).  Petitioner asserts that because the incident report was released on February 28, 2007, the notice of delay dated March 7, 2007 was untimely.  This assertion contradicts the computation of time set forth in BOP Program Statement 5270.07, Chapter 6, where the day of the report, weekends and holidays are excluded from computation.  Thus, as explained above, the advisement of incident report delay signed by a UDC member was issued on the fifth day after the incident report.  Petitioner was advised in writing of the delay and the reasons for it.  (Doc. 7, att. 4).

Finally, petitioner asserts that the advisement of incident report delay (doc. 7, att. 4) was void as it was not signed by the warden.  The form itself provides a place for the warden's signature if hearing will be delayed "_beyond_ 5 working days" (emphasis added).  Because the delay did not exceed five working days, the warden's signature was not required in this case, and there was no due process violation.

In sum, petitioner was convicted of two disciplinary charges based to some extent on his repeated admission of guilt after having been fully advised of his rights. (Doc. 7, att.  5). This court's review of the record reveals that petitioner has failed to meet his burden of proving any due process violations that would render the disciplinary process invalid.

*Case No: 5:08cv157/MCR/MD*

**Based on the foregoing, it is respectfully RECOMMENDED:**

**That the petition for writ of habeas corpus (doc. 1) be DENIED.**

**At Pensacola, Florida, this 8th day of October, 2008.**

/s/ *Miles Davis*
      **MILES DAVIS**
      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:08cv157/MCR/MD*